NOTICE:  All slip opinions and orders are subject to formal
revision and are superseded by the advance sheets and bound
volumes of the Official Reports.  If you find a typographical
error or other formal error, please notify the Reporter of
Decisions, Supreme Judicial Court, John Adams Courthouse, 1
Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-
1030; SJCReporter@sjc.state.ma.us

16-P-420                                         Appeals Court

PATRIOT POWER, LLC[1] vs.  NEW ROUNDER, LLC, & another.[2]

No. 16-P-420.

Middlesex.     December 8, 2016. - March 13, 2017.

Present:  Kafker, C.J., Grainger, & Sullivan, JJ.


Declaratory Relief.  Practice, Civil, Declaratory proceeding,
     Burden of proof, Instructions to jury.  Contract, Lease of
     real estate, Condition, Termination.  Landlord and Tenant,
     Termination of lease.  Real Property, Lease.  Notice.


     Civil action commenced in the Superior Court Department on
March 24, 2014.

     The case was tried before Bruce R. Henry, J.


     Mark C. O'Connor (Douglas S. Denny-Brown also present) for
the plaintiff.
     Robert F. Feeney for the defendants.


     KAFKER, C.J.  The issue presented in this declaratory

judgment and breach of contract action is which party bears the

burden of proof at trial regarding the exercise of a termination

_____

     [1] Doing business as MandaShan Enterprises.

     [2] Concord Music Group, Inc.

option in a lease. The plaintiff, Patriot Power, LLC, doing business as MandaShan Enterprises, was the landlord in a commercial lease; the defendant New Rounder, LLC, was the tenant, and the defendant Concord Music Group, Inc., was the guarantor (we refer to the defendants collectively as tenant). The lease provided that it would automatically renew each year unless either party timely notified the other that it wished to exercise a termination option in the lease. In the instant case, the landlord filed a complaint seeking a declaratory judgment that the tenant had not effectively terminated the lease, and asking for one year's rent plus consequential damages. The tenant answered and counterclaimed, seeking a declaratory judgment that it had properly notified the landlord of its intention to terminate. The landlord sought a pretrial ruling that the tenant had the burden of proof at trial on the issue of whether it sent a lease termination letter before the nonrenewal deadline. A judge denied the motion, ruling that as the "moving party," the landlord bore the burden to prove it did not receive the termination letter on time. At trial, a different judge instructed the jury in accordance with the pretrial ruling. The landlord objected to this instruction. The jury returned a verdict in favor of the tenant.

On appeal, the landlord contends that the trial judge's burden of proof instruction was erroneous and prejudicial.[3] We conclude that the tenant had the burden to prove it fulfilled the termination option requirements outlined in the lease, as this was a condition imposed on the party seeking to end the contractual obligation. Because the jury instruction regarding the burden of proof was erroneous and prejudicial, we reverse.

Background. The following facts are undisputed. On April 1, 2010, the tenant executed a lease with the landlord's predecessor in interest for commercial office and warehouse space in Burlington. On December 31, 2012, the parties executed an amendment to the original lease (first amendment). Section 1.4 of the first amendment states:

> "This Lease, including all covenants, terms, conditions contained herein, shall be automatically extended for additional successive Renewal Terms of one (1) year each unless Tenant or Landlord serves written notice, either party to the other, of either party's option not to so extend the Lease. The time for service of such written notice shall not be more than twelve (12) months or less than six (6) months prior to the expiration of then-current lease period. Time is of the essence."

The original lease also included a provision stating that any notices to either the landlord or the tenant "shall be in

---

[3] Specifically, the landlord argues that the tenant bears the burden of proof because (1) the language of the lease places the burden on the party attempting to terminate, and (2) in an option contract dispute, the party seeking to specifically enforce the option (in this case, the option to terminate the lease) has the burden to prove it effectively exercised the option.

writing and shall be sent by registered or certified mail or by a recognized overnight courier who maintains delivery records, postage prepaid," and that "[a]ll such notices shall be effective when received or, if delivery is refused, upon first refusal."  As the lease was set to renew automatically on March 31, 2014, either party would have had to notify the other by September 30, 2013, if it intended to terminate.

On September 17, 2013, the tenant sent a postage prepaid package via Federal Express (package or Federal Express package) to the landlord's address.  The landlord received the package on September 18, 2013.  Both parties agree that the package contained a "Subordination Non-Disturbance and Attachment Agreement" and a "Tenant Estoppel Certificate" (collectively referred to as the refinancing documents), as well as a transmittal letter referencing the refinancing documents (transmittal letter).  However, the parties dispute whether the package also contained a signed letter, dated September 16, 2013, from the tenant to the landlord, expressing the tenant's intent to terminate the lease (termination notice).  It stated in relevant part:

> "Pursuant to paragraph 1.4 of the Commercial Lease
> Agreement dated as of April 1, 2010, as amended ('Lease'),
> between New Rounder LLC ('Tenant') and Patriot Power, LLC
> (successor-in-interest to Lost Exit Partnership)
> ('Landlord'), this letter is written notice to the Landlord
> that Tenant will not be exercising its option to extend the

Lease. Therefore, the term of the Lease shall expire at noon on March 31, 2014."

Trial. At trial, the tenant's executive assistant, Alma Jimenez, testified that on September 16, 2013, the tenant's senior director of business and legal affairs, Pollyanna Kwok, handed Jimenez the refinancing documents and transmittal letter, with instructions to send them to the landlord via Federal Express. Later that same day, Kwok gave Jimenez the termination notice, also to be sent to the landlord. Jimenez asked Kwok if she could send the termination notice and the refinancing documents in the same envelope, and Kwok answered yes. Jimenez testified that she had "no doubt at all" that she placed the termination notice in the Federal Express package along with the refinancing documents and the transmittal letter. Finally, Jimenez testified that it was her custom to place a copy of any outgoing correspondence in a file after forwarding the original, and that after sending the Federal Express package containing the termination notice, refinancing documents, and transmittal letter, she had placed copies of them in a file labeled "Concord Music Group Lease -- Rounder (Mass) (Volume II)." The file and its contents, including the termination notice, were admitted as an exhibit at trial.

In response, the landlord called its own executive assistant, Melissa Ehrenthal, to testify. Ehrenthal testified

that she had forwarded the refinancing documents to Kwok via electronic mail message (e-mail) on September 16, 2013, and was subsequently home sick for three days. When Ehrenthal returned to work on September 20, 2013, she found an e-mail in her inbox from Kwok, and a Federal Express package from the tenant on her desk. The e-mail from Kwok was dated September 16, and stated in relevant part:

> "Would you please confirm as to whether any notices that we send should be sent to your attention. As you may be aware our lease term ends as of March 31, 2014, and under the lease we need to provide notice as to whether we intend to exercise our option to extend the lease or not by September 30, 2013. Please let me know at your earliest convenience."

Ehrenthal responded to the e-mail by advising Kwok to forward the notice of nonrenewal to Matthew Kinney, one of the landlord's attorneys. She then opened the Federal Express package. Ehrenthal testified that the package only contained the executed refinancing documents and a transmittal letter, and that she was "absolutely certain" there were no other documents inside.

After the close of evidence, the judge gave the jury charge, which included the following instruction regarding the burden of proof:

> "[T]he [landlord] must persuade you that it is more probable than not that what it is claiming with regard to the lease renewal is true. If you find that it is more likely or equally likely that the [landlord's] claim is not true, the [landlord] has failed to sustain its burden of

proof . . . . It is the burden of the [landlord] to prove by a preponderance of the evidence that the notice of intent to terminate the lease was not contained in the FedEx package when it was received."

The landlord objected to the instruction, arguing that the tenant was "required to show [by] a fair preponderance of the evidence that it effectively exercised the option." Following deliberations, the jury answered "No" to the special question, "Did the [landlord] prove by a preponderance of the evidence that it did not receive the termination notice from the [tenant] in the FedEx package delivered to it on September 18, 2013?" and returned a verdict in favor of the tenant.

Discussion.  "In a declaratory judgment action, the determination concerning which party has the burden of proof depends on the nature of the underlying action."  Haskell v. Versyss Liquidating Trust, 75 Mass. App. Ct. 120, 126 (2009). See Stop & Shop, Inc. v. Ganem, 347 Mass. 697, 703 (1964) ("Had the lessors brought an action for damages for breach of an implied covenant to continue operations they would, of course, have had the burden of showing the covenant.  That the lessee initiated the proceeding for declaratory relief does not shift the burden to the lessee"); Foley v. McGonigle, 3 Mass. App. Ct. 746 (1975) (in easement dispute, "[t]he fact that the plaintiff initiated this proceeding for declaratory relief does not shift th[e] burden to him").

In the instant breach of contract and declaratory judgment action, the existence of the lease and its automatic renewal provision were undisputed.  See Restatement (Second) of Property:  Landlord & Tenant § 1.5 comment f, at 24 (1977) ("The lease may specify the time before the end of the designated period that notice must be given by either party to terminate the lease as of the end of the period.  If no such notice of termination is given, the lease will continue for another period").  The only issue at trial was whether the lease termination option was properly exercised by the party seeking to discontinue the lease.  In these circumstances we conclude that the nature of the underlying action, and therefore who has the burden of proof, is best defined by a line of cases in which "one relying on a condition to avoid a contractual obligation has the burden to prove the occurrence of the condition." Haskell, 75 Mass. App. Ct. at 126.  The rationale for such an allocation of the burden of proof is particularly strong where the condition for avoiding the contractual obligation actually requires an affirmative act by the party seeking to end the obligation, as it does here.  Cf. Restatement (Second) of Property:  Landlord & Tenant § 1.5 comment f, at 25 ("The lease may specify that the notice of termination must be in writing . . . .  If [notice of termination] is mailed the notice is not effective until it is received by the addressee and the burden

of proof is on the one giving the notice to prove when it was received"); 13 Corbin on Contracts § 68.9(1), at 255-256 (2003) ("To establish a discharge because of the exercise of a conditional power to terminate or to cancel, the party with the privilege must establish the fulfillment of the condition -- the existence or occurrence of the fact or event constituting the condition").

The seminal case is Gray v. Gardner, 17 Mass. 188 (1821). In Gray, "[t]he very words of the contract show that there was a promise to pay, which was to be defeated by the happening of an event, . . . the arrival of a certain quantity of [sperm whale] oil, at the specified places [in Nantucket and New Bedford], in a given time." Id. at 189. The contract was considered to be "like a bond with a condition; if the obligor would avoid the bond, he must show performance of the condition." Ibid. The court held that the burden to prove that the designated quantity of sperm whale oil had arrived at Nantucket and New Bedford during the specified dates was on the defendants, not the plaintiffs bringing suit to enforce the promise to pay: "[t]he defendants, in this case, promise to pay a certain sum of money, on condition that the promise shall be void on the happening of an event. It is plain that the burden of proof is upon them; and if they fail to show that the event has happened, the promise remains good." Ibid.

The instant case likewise involves a contractual obligation, and a condition that would void the obligation. Indeed, the condition imposes a requirement in the form of an affirmative act by the party seeking to terminate the ongoing obligation.  More specifically, the contract between the landlord and the tenant provided that the lease would automatically renew each year, unless one of the parties timely and properly notified the other that it intended to terminate the lease.  Cf. Restatement (Second) of Property:  Landlord & Tenant § 1.5 comment f.  To end its contractual obligation, the tenant therefore had to exercise the option by serving written notice that it was terminating the lease.  The burden of proof of the satisfaction of that condition should therefore have been placed on the tenant in this declaratory judgment action.  See Gray, supra; Thayer v. Conner, 5 Allen 25, 26-27 (1862) (where defendant's promise to pay plaintiff thirty dollars for sale and delivery of goods to be used in store was to be voided if defendant was deprived by third party of use of store, defendant bore burden to prove he had indeed been removed from store); Haskell, 75 Mass. App. Ct. at 126-127 (party required to return shares of stock unless per share price reached $1.50 had burden of proving stock price reached $1.50).  See also Restatement (Second) of Property:  Landlord & Tenant § 1.5 comment f; 13 Corbin on Contracts § 68.9(1).

As the instruction here erroneously placed the burden of proof on the landlord, and the landlord objected, we next consider whether the error was prejudicial. "An error in jury instructions is not grounds for setting aside a verdict unless the error was prejudicial -- that is, unless the result might have differed absent the error." Blackstone v. Cashman, 448 Mass. 255, 270 (2007). Both the landlord's and the tenant's cases rested primarily on the testimony of their respective executive assistants, who directly contradicted each other. Such credibility questions must be resolved by the fact finder, not an appellate court. See Commonwealth v. Randolph, 438 Mass. 290, 300 (2002) ("As an appellate court we do not sit as a second jury, but we must accept the fact finders' evaluation of witness credibility, as evidenced by their findings" [citation omitted]). The judge here instructed the jury to find for the tenant if it was "more likely or equally likely that the [landlord's] claim [was] not true" (emphasis added). This was incorrect, as a jury that could not resolve the credibility question should have decided in favor of the landlord, not the tenant, as the tenant (the party exercising the termination option) had the burden of proof. As we do not know whether the jury decided the credibility question in favor of the tenant or found both executive assistants equally credible or incredible,

we conclude the result might have differed absent the error.  We therefore reverse.

Judgment reversed.

Verdict set aside.